**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

DYNAMIC ROBOTIC SOLUTIONS, INC.                    CASE NO.:  1:23-cv-00070
d/b/a SHAPE PROCESS AUTOMATION

                    Plaintiffs,

vs.

SIMWON TECH, INC., and
SIMWON NA CORP.,

                    Defendants.
_____/

## COMPLAINT

Plaintiff, Dynamic Robotic Solutions, Inc. d/b/a Shape Process Automation ("SPA" or "Plaintiff"), brings this action against Defendants, Simwon Tech, Inc. and Simwon NA Corp. (collectively, "Simwon" or "Defendants"), and allege as follows:

**THE PARTIES, JURISIDICTION AND VENUE**

1.    Plaintiff Dynamic Robotic Solutions, Inc. d/b/a Shape Process Automation is a Michigan corporation with its principal place of business in Auburn Hills, Michigan.

2.    Defendant Simwon Tech, Inc. is a South Korean corporation with its principal place of business located in Anyang, Gyeonggi, South Korea.

3.    Defendant Simwon NA Corp. is a corporate subsidiary of Simwon Tech, Inc. and is a Texas corporation with its principal place of business located in Kyle, Texas.

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000, USD.

5.      This Court has personal jurisdiction over Defendants because they transact business within the State of Texas, contract to supply goods or services in the State of Texas, and have engaged in the acts alleged herein within the state of Texas.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims occurred in this judicial district.  As more specifically set forth later in this Complaint, the machinery underlying the contract at issue was intended for Defendants' facility located in Kyle, Texas, and was later installed at the Kyle facility.

## GENERAL ALLEGATIONS

### Background on Plaintiff

7.      SPA is a global, high-tech engineering and process automation provider that has redefined manufacturing through the use of cutting-edge robotic technology.

8.      Through its industry leading technology, SPA provides invaluable resources to its clients by improving the productivity, quality, reliability, and safety of their manufacturing operations.

9.      SPA consistently develops innovative technologies that continue to advance robotics and manufacturing.

10.     Indeed, SPA developed unique automated laser solutions for 2D and 3D cutting and trimming for use across various industries, including the automotive industry.

### Background on Defendants

11.     Simwon Tech, Inc. is a manufacturer of motor vehicle parts and is based in South Korea.

12.    Simwon Tech, Inc. is a supplier for the world's most valuable automaker, Tesla, Inc. ("Tesla"), and manufacturers and supplies auto parts for Tesla vehicles such as the Tesla Model Y.

13.    In furtherance of Simwon Tech, Inc.'s relationship with Tesla, Simwon Tech, Inc. built a factory immediately outside of Austin, Texas to manufacture and supply parts for vehicles built at Tesla's factory located in Austin.

14.    Upon information and belief, Simwon Tech, Inc. established a subsidiary entity which operates in the United States at the Kyle, Texas facility under the name Simwon NA Corp. (the co-defendant herein).

### Background on Current Dispute

15.    Simwon and SPA first corresponded on or around November 18, 2020 regarding the possibility of Simwon using SPA technology in Simwon's plants located in the United States. These conversations led to Simwon's desire for SPA to manufacture RoboLase® Quad Robot Tri-Wing Laser Trimming Systems (the "Systems") and install the Systems at Simwon's Austin, Texas plant (collectively, the "Project"). This technology is an automated, robotic laser cutting solution, and Simwon intended to use the Systems in its manufacture of doors for Tesla's Model Y vehicles.

16.    SPA's RoboLase® Quad Robot Tri-Wing Laser Trimming Systems use the power of light to transmit a laser beam onto a part that needs to be cut. The automated, robotic technology is a completely non-contact process, and allows for high speed, high quality and flexibility with the unique ability to cut today's press-hardened steel products. *See* Exhibit A for further information on SPA's robotic laser cutting systems.

17.    Following these communications, SPA provided Simwon with a detailed, 35-page technical proposal on February 9, 2021 (the "Proposal"). The Proposal contained comprehensive

pricing, terms, and conditions for the Project. *See* Exhibit B, a true and correct copy of the Proposal. Specifically, the Proposal included specific terms including, *inter alia*: i) scheduling; ii) pricing (including service rates, capital cost reductions, costs for optional additional training, and four milestones at which invoices would be paid); iii) the proposed layout for the Systems; iv) the Systems operating description; v) an anticipated timeline; vi) the anticipated required equipment and services, and vii) safety information. *See id.*

18.     Simwon responded the next day on February 10, 2021 with a purchase order, agreeing to pay $6,859,324, USD for the Project (the "Purchase Order"), which formed a binding agreement (the "Agreement"). *See* Exhibit C, a true and correct copy of the Purchase Order.

19.     The Purchase Order specified that Simwon would purchase from SPA two (2) RoboLase® Quad Robot Tri-Wing Laser Trimming Systems, both for delivery and installation at Simwon's Austin, Texas facility. In accordance with the Proposal, the Purchase Order also provided that Simwon would pay for the Project in four installments. *See* Exhibit C.

20.     On March 3, 2021, SPA agreed to amend the Agreement to adjust the milestone payment schedule previously agreed to by the Parties. These revised milestones had the effect of pushing out Simwon's payments to SPA. The newly agreed-upon payment milestones were for specified percentages of the total payment, and were delineated as follows:

     i)      1st down payment upon cont[r]act award 5% (TT – wire transfer)
     ii)     2nd down payment 25% 4 to 5 weeks from 1st payment by Letter of Credit (LC)
     iii)    40% at Factory Acceptance Test (FAT) at SPA Auburn Hills MI – Note payment becomes due if customer fails to attend FAT within 45 days of scheduled FAT activity date – by LC
     **iv)**    **20% installation and confirming operation of machine at Austin TX SIMWON facility – by LC**
     v)     10% final payment at completion of Site Acceptance Test (SAT) at Austin TX – by LC

*See* Exhibit D, a true and correct copy of the March 3, 2021 Amendment (emphasis added).

21.     Over the following year, SPA worked diligently to fulfill all of its contractual obligations.

22.     Simwon was satisfied with SPA's work product and progress, as Simwon paid the first three Milestone Payments, amounting to 70% of the contract price.

23.     In January 2022, SPA delivered the Systems to Simwon's Austin plant.  By May 2022, SPA installed the Systems at Simwon's Austin plant and confirmed its operation as required under the Agreement, triggering the Fourth Milestone Payment.  *See* Exhibit E for pictures of the Systems at Simwon's Austin plant.

24.     After installation, the Systems were able to run in full automatic mode.  SPA demonstrated the Systems' operation to Simwon by producing more than nine hundred (900) production part sets.  Moreover, SPA demonstrated the production results were repeatable on all three (3) required features.  Specifically, SPA loaded and unloaded the same part onto the cutting fixtures of the Systems, using the material handling robots, and scribed the parts multiple times by repeating shallow cuts on the same material.  The scribe marks were consistently overlapping, demonstrating the repeatability of the material handling, cutting fixture, and cutting robot performance.

25.     Therefore, SPA met the requirements of the Fourth Milestone, triggering payment of an additional twenty (20) percent of the total payment.

26.     Shape subsequently sought payment of the Fourth Milestone, and sent Simwon an invoice entitled "20% Installation and Confirming Operation at Austin", seeking payment of $1,371,864.80, USD.  *See* Exhibit F, a true and correct copy of the invoice.

27.     To date, Simwon has failed and refused to make the Fourth Milestone payment.

28.     SPA has given Simwon ample opportunities to pay the invoice and comply with the Fourth Milestone of the Agreement.  Over several months, numerous representatives from SPA have communicated with Simwon representatives to remind and reiterate Simwon's obligation to pay the required Fourth Milestone payment.  SPA representatives also met with Simwon representatives in a good faith attempt to resolve the dispute without the need for litigation.  For example, SPA representatives and Simwon representatives met on site at Simwon's Austin facility on June 1, 2022, and there was multiple virtual meetings between SPA management and Simwon representatives.

29.     However, Simwon has rebuked these repeated attempts at resolution and has instead attempted to rewrite the Parties' Contract by implementing new and unreasonable payment conditions eighteen (18) months after contract formation.

30.     Simwon has similarly failed to properly support the Project by, among other things, failing to provide required parts, data, and information as required by the Parties' Agreement.  By way of analogy, Simwon ordered a "bespoke" suit and failed to provide a body for the fitting.

31.     Further, Simwon has also failed to provide adequate labor and support for testing and installation of the Systems.

32.     These additional breaches have caused substantial project delays and costly work stoppages.

33.     Indeed, these additional breaches have inflicted additional harm on SPA and continue to cause added expenses.  Such additional costs continue to accrue, but are in no case less than $720,000, USD.

34.     Despite Simwon's failures, SPA has continued to communicate its commitment to complete the Project.  Indeed, representatives from SPA sent detailed re-engagement plans to

Simwon, outlining the key elements Simwon would be required to fulfill in order for SPA to complete the Project.

35.     However, as of the date of the filing, Simwon still has not provided the necessary parts, data, information and resources, and has not paid the past-due Fourth Milestone amount.

36.     Simwon's behavior is not harmless.  SPA has purchased and paid for over three (3) million dollars in equipment for the Systems that will go unused if the parties are unable to complete the Project.

37.     Despite the numerous good-faith attempts SPA made to resolve this matter, to date, Defendants have refused and/or failed to remit payments to SPA in violation of the express terms of the Agreement.

## COUNT I
### *Breach of Contract*

38.     SPA hereby restates and reincorporates the allegations set forth in Paragraph 1 through 37, as if fully set forth herein.

39.     SPA and Defendants formed a contract, whereby, in exchange for the machinery, expertise, and services described above, Defendants agreed to pay SPA in accordance with the agreed-upon milestone payment structure.

40.     The Agreement constitutes a valid and enforceable contract between the Parties.

41.     In accordance with the terms of the Agreement, the Fourth Milestone payment was to have been paid following installation and confirmation of operation of the Systems at Defendants' Austin, Texas facility.

42.     SPA installed and confirmed operation of the Systems at Defendants' Austin, Texas facility by May 2022.  As such, SPA is entitled to the Fourth Milestone payment, pursuant to the Agreement.

43.    SPA bestowed the bargained-for services and otherwise has performed all conditions precedent to hereby entitle SPA to be paid 20% of the contract price, or $1,371,864.80, in accordance with the Fourth Milestone.

44.    Defendants have also breached the Agreement by failing to provide required parts, data, and information necessary for adequate testing and installation of the Systems, as required in the Agreement.

45.    These additional breaches have caused substantial project delays and work stoppages, and SPA has suffered added damages that continue to accrue, but are in no case less than $720,000, USD.

46.    Demand has been made upon Defendants on multiple occasions to perform their contract with SPA and pay the requisite amount, but they have refused to do so.  Thus, Defendants have breached their contract with SPA.

47.    As a result of Defendant's breach of contract, SPA has been substantially and irreparably harmed and will continue to suffer monetary damages in an amount to be determined at trial.

48.    Accordingly, SPA seeks specific performance of Defendants' obligations owed under the Agreement and other monetary damages directly and proximately caused by Defendants' breach of the Agreement, including interest, attorney's fees, and costs.

## COUNT II
*Breach of Good Faith and Fair Dealing*

49.    SPA hereby restates and reincorporates the allegations set forth in Paragraph 1 through 37, as if fully set forth herein.

50.    At all relevant times, a special relationship existed between SPA and Defendants, as the Agreement between the parties required SPA to make an up-front, multi-million dollar

expenditure that would only be recouped if Simwon complied with its contractual obligations and fully paid all required payment milestones. Further, Simwon's attempts to strong-arm SPA into agreement to new contractual terms 18 months into the Agreement demonstrate an imbalance of power that is emblematic of a special relationship.

51.    In connection with their contractual responsibilities under the Agreement and because of the parties' special relationship, the common law duty of good faith and fair dealing required Defendants to act in good faith and with fairness, decency, and reasonableness toward SPA in all matters pertaining to the Agreement, specifically in supporting the Project.

52.    Specifically, among the various duties in the Agreement, Defendants were required to provide certain parts, data, and information to assist in the manufacture and installation of the Systems.

53.    Defendants similarly failed to properly support the Project by failing to provide necessary labor and support for testing and installation of the Systems.

54.    Defendants did not act in good faith, in accordance with the Agreement, when they failed to provide required parts, data, information, labor, and support, causing financial harm to SPA.

55.    Defendants accordingly breached their duty of good faith and fair dealing to SPA.

56.    These breaches have caused substantial project delays and work stoppages that have inflicted harm on SPA and required SPA to incur additional expenses.

57.    As a direct and proximate result, SPA suffered damages in an amount to be proven at trial, but are in no case less than $720,000, USD.

## COUNT III
### *Quantum Meruit*

58.     SPA hereby restates and reincorporates the allegations set forth in Paragraph 1 through 37, as if fully set forth herein.

59.     Should it be determined that any of the services provided by SPA were not covered by contract, then SPA seeks recovery in quantum meruit.

60.     Specifically, SPA furnished valuable services to Defendants by providing additional labor and materials that were necessitated by Defendants' failure to provide the parts, data, and information required for adequate testing and installation of the Systems.

61.     SPA reasonably expected that the Defendants would compensate it for such furnished services, as SPA's hourly service rates were outlined in the Agreement.

62.     Defendants accepted SPA's services knowing that SPA expected such compensation.

63.     SPA was damaged in that it did not receive the expected compensation for its services.

64.     As a direct and proximate result, SPA suffered damages in an amount to be proven at trial, but are in no case less than $720,000, USD.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dynamic Robotic Solutions, Inc. d/b/a Shape Process Automation prays for judgment in its favor and against Defendants, Simwon Tech, Inc. and Simwon NA Corp., as follows:

1.     An order directing specific performance of the Agreement, including ordering Defendants to make immediate payment of $1,371,864.80, USD pursuant to the Fourth Milestone, to provide the required parts, data,

information, labor, and support necessary for adequate testing and installation of the Systems, and to make the fifth and final payment of the Fifth Milestone upon completion of the Site Acceptance Test (SAT);

2.  An award to Plaintiff of additional damages incurred by Plaintiff as a result of project delays and work stoppages caused by Simwon's breaches, which continue to accrue, but are in no case less than $720,000, USD;

3.  An award to Plaintiff of any other damages incurred by Plaintiff as a result of Defendants' unlawful conduct and breach of contract;

4.  An award to Plaintiff of pre-judgment interest at the maximum rate allowed by law;

5.  An award to Plaintiff of post-judgment interest at the maximum rate allowed by law;

6.  An award to Plaintiff of the costs incurred by its in connection with this suit;

7.  An award to Plaintiff of reasonable attorney's fees incurred by its in connection with this suit; and

8.  Such other and further relief to which Plaintiff may show itself to be justly entitled.


Dated: January 23, 2023

Respectfully submitted,

COZEN O'CONNOR

By: /s/ *Kendall Kelly Hayden*
Kendall Kelly Hayden
Texas Bar No. 24046197
kayden@cozen.com
Tyler M. Frankel
Texas Bar No. 24101767
tfrankel@cozen.com
1717 Main Street, Suite 3100
Dallas, Texas 75201
Telephone: (214) 462-3000

Hugh Marbury, *pro hac vice* pending
Washington, DC Bar No. 457591
hmarbury@cozen.com
1200 19th Street NW
Washington, DC 20036
Telephone: (202) 747-0781

Madison McNulty, *pro hac vice* pending
Pennsylvania Bar No. 330924
mmcnulty@cozen.com
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-5562

***Counsel for Plaintiff, Dynamic Robotic Solutions, Inc. d/b/a Shape Process Automation***