IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DYNAMIC ROBOTIC SOLUTIONS, | § | No. 1:23-CV-00070-DAE |
| INC. d/b/a SHAPE PROCESS | § | |
| AUTOMATION, | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| SIMWON TECH, INC., SIMWON NA | § | |
| CORP., and SIMWON AMERICA | § | |
| CORP, | § | |
| *Defendants*. | § | |
| | § | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

Before the Court is Defendant Simwon Tech, Inc. ("Simwon Tech"),

Simwon NA Corp.'s ("Simwon NA")'s Motion to Dismiss (Dkt. # 25) and

Simwon America Corp.'s ("Simwon America") Motion to Dismiss and Joinder in

Support of the Other Defendants' Motion to Dismiss (Dkt. # 35).  After careful

consideration of the arguments presented, the Court **GRANTS IN PART AND**

**DENIES IN PART** Defendants' Motions to Dismiss.

BACKGROUND

I.      The Parties

Plaintiff Shape Process Automation ("SPA" or "Plaintiff") is a global,

high-tech engineering and process automation provider specializing in robotic

1

manufacturing technology.  (Dkt. # 24 at 2.)  Plaintiff produces automated laser equipment for the automotive industry.  (Id. at 3–4.)  Defendant Simwon Tech is a Korean motor vehicle parts manufacturer and supplier for automaker Tesla, Inc. ("Tesla").  (Id. at 3)   Defendant Simwon NA Corp. ("Simwon NA"), a Texas corporation, is a Simwon Tech subsidiary that operates a factory in Kyle, Texas.  (Id.)  Defendant Simwon America, a California corporation, is another Simwon Tech subsidiary that operates a factory in Lathrop, California.  (Id.)  All Defendants are referred to collectively as "Simwon" or "Defendants" throughout the First Amended Complaint ("FAC").  The present dispute began with Plaintiff's and Defendants' desire for Defendants to use Plaintiff's robotic laser cutting technology in Defendants' plants across the United States.  (Id. at 5.)

## II.    The Texas Project

In February 2021, Plaintiff provided a proposal to Simwon Tech's Austin, Texas facility.  (Id. at 4.)  Simwon responded with a purchase order, which formed a binding agreement (the "Texas Agreement").  (Id., Ex. C.)  The Texas Agreement stipulated that Simwon Tech would initially pay $6,859,324 for the "Texas Project" in four installments in exchange for two RoboLase® Quad Robot Tri-Wing Laser Trimming Systems (the "Systems").  (Id.)  However, the Texas Agreement was amended in March 2021 to add a fifth payment while pushing the

date on other payments.  (Id., Ex. D.)  Simwon paid the first three milestone

payments, amounting to 70% of the contract price.  (Id.)

       The Texas Agreement required Simwon to pay the fourth installment,

which is 20% of the total contract price ($1,371,864.80), upon installation and

confirmed operation of the Systems at Simwon's Austin plant.  (Id.)  Plaintiff

contends that Simwon has failed and refused to make the fourth milestone

payment.  (Id.)  Plaintiff further claims Simwon Tech has failed to "properly

support the Texas Project" by failing to provide required parts, data, information,

adequate labor, and support for testing and installation of the Systems, resulting in

delays and additional expenses to Plaintiff.  (Id. at 7.)

### III.   The California Project

       The Parties executed a separate agreement in January 2022 for SPA to

sell laser-cutting equipment to Simwon Tech for use in its California factory (the

"California Project").  (Id. at 8.)  This "California Agreement" was formed by the

receipt of a Simwon purchase order in response to SPA's proposal.  (Id.)  The

California Agreement specified that Simwon Tech would pay a total price of

$6,970,000 in four installments, with the first installment being a down payment of

30% of the total contract price ($2,091,000).  (Id., Ex. G.)  Plaintiff contends that

Simwon Tech has failed and refused to make the first installment payment in

violation of the express terms of the California Agreement.  (Dkt. # 25 at 4.)

IV.   <u>Procedural History</u>

   SPA initiated the above-referenced action on January 23, 2023, against Defendants Simwon Tech, the parent company, and Simwon NA, the Texas subsidiary.  (Dkt. # 1.)  Plaintiff's Complaint originally only included claims and allegations relating to the Texas Project.  (<u>Id.</u>)

   Simwon Tech and Simwon NA filed an answer on March 27, 2023, raising counterclaims of fraudulent misrepresentation under Texas and California law, breach of Cal. Civ. Code § 1689, negligent misrepresentation under Texas law, money had and received under Texas law, and in the alternative, breach of contract and breach of warranties under Texas law.  (Dkt. # 9.)  The case was transferred to the undersigned on April 26, 2023.  (Dkt. # 16.)

   Plaintiff then filed its First Amended Complaint ("FAC"), on September 25, 2023, adding Simwon America Corp. as a Defendant.  (Dkt. # 24.) The FAC alleges six counts against all Defendants, referring to them collectively as "Simwon."  (<u>Id.</u>)  The first three counts, breach of the Texas Agreement (Count I), breach of good faith and fair dealing (Count II), and "in the alternative" quantum meruit (Count III), concern the Texas Project.  (<u>Id.</u> at 4-5.)  The last three counts, breach of the California Agreement (Count IV), breach of good faith and fair dealing (Count V), and promissory estoppel (Count VI), concern the California Project.

Defendants Simwon Tech and Simwon NA filed the present Motion to Dismiss on October 10, 2023.  (Dkt. # 25)  Plaintiff filed a Response on October 24, 2023.  (Dkt. # 27)  Defendants filed a Reply on October 31, 2023.  (Dkt. # 31.)  Defendant Simwon America waived service of process and filed a Motion to Dismiss on December 22, 2023.  (Dkt. # 35.)  Plaintiff filed its joinder to its previous Opposition in response to Simwon America's Motion.  (Dkt. # 37.)

LEGAL STANDARD

I.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.   Fed. R. Civ. P. 12(b)(2)

Where a nonresident defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must determine whether it has personal jurisdiction over the defendant by "first determin[ing] whether the long arm statute of the forum state permits exercise of jurisdiction[,] . . . then determin[ing] whether such exercise comports with due process." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). "The Texas long-arm statute extends to the limits of the Constitution," and a Texas court's "inquiry is therefore limited to the reach of the Fourteenth Amendment's Due Process Clause." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008). "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant.  Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction).  Where a Defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'"  Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n. 9). The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, PsA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Where a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction.  Id.

DISCUSSION

Defendants first move to dismiss all claims against Simwon America, arguing that the Court lacks personal jurisdiction over the California corporation. (Dkt. # 25 at 3.)  Then, Defendants argue that the breach of good faith and fair dealing claims and the quantum meruit claims should be dismissed against Simwon Tech and Simwon NA.  (Id.)  Lastly, Defendants argue that all of the other claims should be dismissed against all Defendants because they are "shotgun" pleadings that vaguely asserted claims against all "Defendants" or "Simwon" collectively. (Id. at 7.)

I.    Timeliness of FAC

As an initial matter, Defendants claim that Plaintiff's FAC should be struck because it was filed after the time to amend a pleading as a matter of course had passed, and the FAC was filed without opposing party's written consent or the courts leave, as required by Rule 15(b).  (Dkt. # 25 at 7 (citing FED. R. CIV. P. 15)).  However, the FAC was filed before the deadline to file an amended pleading in the Scheduling Order.  (Dkt. # 23.)  While the Fifth Circuit has stated that failing

to request leave of court under these circumstances normally means the complaint has "no legal effect," there is an exception where "the plaintiff could still re-file the complaint without prejudicing another party." U.S. ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293, 296 (5th Cir. 2003).  Here, the Court would have granted leave to file an Amended Complaint, as the scheduling order deadline to amend pleadings had not passed.  There is no prejudice to Defendants by allowing the amendment, though it adds additional factual allegations and a different party, Defendants may still raise objections and defenses to the allegations.  Cf. Golden v. Gen. Motors LLC, No. 1:17-CV-606-RP, 2017 WL 5633465 at *4, (W.D. Tex. Nov. 22, 2017) (finding that the amendment prejudiced defendant when allowing the change would add a non-diverse defendant and deprive the defendant of its statute of limitations defense).  Despite the party's failure to ask for leave when it filed its FAC, the Court will not impose the harsh remedy of striking the FAC.

II.     Personal Jurisdiction Over Simwon America

        Simwon America was joined as a Defendant in Plaintiff's FAC, and Plaintiff alleges that Simwon America is a co-defendant as to all six counts.  (Dkt. # 25.)  Adding Simwon America as a Defendant on all six counts is puzzling.  Simwon America is allegedly Simwon's California subsidiary, and it is unclear how Simwon America could possibly have breached the Texas Agreement or be

involved in the Texas Project.  Yet, Plaintiff generally alleges all claims against all "Defendants."

Defendants argue that Simwon America is not a proper party, and any claims against it should be dismissed for lack of personal jurisdiction.  (Dkt. # 25 at 7.)  Plaintiff contends that Simwon America consented to personal jurisdiction because the other two Defendants, Simwon Tech and Simwon NA, brought counterclaims against Plaintiff related to the California Agreement.  Therefore, "SPA was forced to amend its Complaint to address the California project," which "included naming Simwon America as an additional party" because Simwon America is "inextricably linked to the California Project."  (Id. at 7.)

Defendants then move to the merits of their objection, arguing that this Court may not exercise personal jurisdiction over Simwon America because Simwon is not subject to either general or specific personal jurisdiction here.  (Dkt. # 25 at 8.)

The Court may exercise general jurisdiction when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.  Seville v. Maersk Line, Ltd., 53 F.4th 890, 895 (5th Cir. 2022).  A corporation is "essentially at home" where it is incorporated, where it has its principal place of business, or, in exceptional cases, where the operations are "substantial of such a nature as to render the corporation at home[.]"  Id.  "[I]t is

10

incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." Frank v. P N K (Lake Charles) L.L.C., 947 F.3d 331, 337 (5th Cir. 2020)  Plaintiff concedes that Simwon American is incorporated in California with its principal place of business in Lathrop, California.  (Dkt. # 24 at 1.)   Plaintiff provides no additional facts about the operations of Simwon America in Texas.  Therefore, the Court may not exercise general jurisdiction here.

The Court may also not exercise specific personal jurisdiction here. Specific jurisdiction arises when a defendant has minimum contacts with a forum state as it related to the pending lawsuit.  Seville v. Maersk Line, Ltd., 53 F.4th 890, 895 (5th Cir. 2022).  There is a three-pronged analysis: (1) whether Simwon America has minimum contacts with the forum state, (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts, and (3) whether the exercise of personal jurisdiction is fair and reasonable.  Id. Here, Plaintiff does not even attempt to allege that Simwon America specifically has made any contacts with Texas.  Instead, Plaintiff alleges all claims vaguely against all "Defendants."  However, as noted above, it is unclear how Simwon America could plausibly be involved with a breach of contract related to the Texas Agreement, to which it was a not a party.  Therefore, the Court finds it may not

exercise specific personal jurisdiction due to a dearth of facts connecting Simwon America to Texas.

The Court also notes that neither Simwon NA nor Simwon Tech's contacts with Texas may attributed to Simwon America for the purposes of personal jurisdiction, regardless of their corporation affiliation.  See Freudensprung v. Offshore Tech. Services, Inc., 379 F.3d 327 (5th Cir. 2004)  ("As a general rule, however, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.")

Plaintiff's pleadings must contain "factual allegations that reasonably suggest that personal jurisdiction exists."  Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005).  Because Plaintiff fails to allege any facts that either specific or personal jurisdiction exists, the Court finds that there is no personal jurisdiction over Simwon America.

Rather than alleging facts connecting Simwon America and Texas, Plaintiff states that the Court has personal jurisdiction over Simwon America because Defendants Simwon Tech and Simwon NAH "raised the issued and brought counterclaims regarding [Simwon America] in their Answer and Counterclaims[.]"  (Dkt. # 24 at 2.)  Yet, Plaintiff cites no authority for its position that another defendant may waive an objection to personal jurisdiction on behalf of

another.  While Plaintiff correctly contends that there are some circumstances

where a Defendant may waive an objection to personal jurisdiction by its own

conduct, Plaintiff fails to point the Court to any scenario where another party

waived personal jurisdiction on behalf of a defendant.  See PaineWebber Inc. v.

Chase Manhattan Private Bank (Switzerland), 260 F.3d 453, 460 (5th Cir. 2001).

Like in PainWebber, this is not a case where the party seeking to avoid the

jurisdiction has commenced an action in the forum, has asserted counterclaims, or

litigated extensively on the merits before making any jurisdictional objections.  See

id.  Instead, Simwon America's only action in this forum has been to object to the

exercise of personal jurisdiction in this case. The Court holds that Simwon

America has the right to object to personal jurisdiction here.

      Plaintiff next contends that the Court has personal jurisdiction because

"Simwon America is a necessary party to any litigation concerning the California

Project." (Dkt. # 27 at 7.)  Therefore, Plaintiff essentially argues that when joinder

is compulsory, any objection to personal jurisdiction must be overruled.

      Though Plaintiff fails to cite this rule or provide the relevant analysis,

Rule 19 governs the required joinder of parties.  FED. R. CIV. P. 19.  Under Rule 19,

a party is required to be joined if, in that party's absence, the court cannot accord

complete relief among existing parties, or the absent party claims an interest

relating to the subject matter of the action.  Id.  However, the "joinder rules do not

create jurisdiction." <u>Kinney v. Int'l Bus. Machines Corp.</u>, No. 1-20-CV-969-LY, 2021 WL 11670020 (W.D. Tex. June 7, 2021), amended on reconsideration, No. 1:20-CV-00969-LY, 2021 WL 11670024 (W.D. Tex. July 7, 2021) (citing FED. R. CIV. P. 82).  Instead, if a required party cannot be joined because there is no personal jurisdiction, dismissal may be appropriate.  FED. R. CIV. P. 19(b).

　　　While Plaintiff does not directly address the Rule 19 factors that govern whether a party is required, Plaintiff states that Simwon America is a necessary party because Simwon America directly managed the California Project and Simwon America employees were in regular contact with SPA employees regarding the California Project.  However, Plaintiff fails to explain how the court cannot accord complete relief for Plaintiff's breach of contract claim, breach of good faith and fair dealing, and promissory estoppel claim with Simwon America's absence.  Plaintiff should be able to seek the same relief against the parent company, Simwon Tech, as it pleads the exact same allegations against both parties.  For these reasons, Simwon America is not a necessary party.

III.　　<u>SPA's Untimeliness Argument:</u>

　　　Plaintiff SPA contends that Defendants have waived their right to raise the failure to state a claim defense related to the Texas-based claims because they did not file a Motion to Dismiss the original complaint within the required 60-day period after the request for waiver of service.  (Dkt. # 27 at 9.)

14

This Court finds that the Defendants have not waived their 12(b)(6) arguments against the Texas claims due to untimeliness.  Rule 12(b) provides that a motion asserting a 12(b) defense to a claim for relief in a pleading must be asserted before or in the responsive pleading of one is required.  FED. R. CIV. P. 12.  Though Defendants did not file a Motion to Dismiss the Texas claims under 12(b)(6) after Plaintiff filed its original Complaint, Defendants asserted Plaintiff's failure to state a claim as the "First Defense" in their answer to the original Complaint.  (Dkt. #31 at 5.)  Courts generally permit a Rule 12(b)(6) motion to be filed after the answer if the defense was included as an affirmative defense in the original answer.  Estate of Aragon v. City of San Antonio, No. SA-14-CA-0673-FB, 2015 WL 13793383, at *1 (W.D. Tex. June 3, 2015); Delhomme v. Caremark RX Inc., 232 F.R.D. 573, 575 (N.D. Tex. 2005); Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico, Inc., 304 F. Supp. 2d 903, 907 (W.D. Tex. 2003).  Therefore, Defendant's present motion is timely.[1]

---

[1] This Court could also consider Defendant's motion as a Rule 12(c) motion for judgment on the pleadings, which follows the same legal standard.  See Reeves v. Wells Fargo Bank, N.A., No. EP-13-CV-318-DCG, 2014 WL 12492038, at *3 (W.D. Tex. April 14, 2014) (treating a post-answer motion to dismiss as timely or as a motion for judgment on the pleadings).  Both rules, 12(b)(6) and 12(c) test the sufficiency of the allegations in the complaint to state a plausible claim for relief. Both motions use the same plausibility standard established by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

IV.   <u>Breach of Good Faith and Fair Dealing</u>

Defendant alleges that Plaintiff's breach of good faith and fair dealing claims (Counts II and V) fail against all Defendants because Plaintiff fails to plead a special relationship.  (Dkt. #27 at 11.)  The breach of good faith and fair dealing claim under Texas law relates to the Texas Project and the California claim relates to the California Project.  (Dkt. #27 at 11–16.)

A.  <u>California Law</u>

Under California law, every contract contains an implied covenant of good faith and fair dealing.  <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422, 434 (9th Cir. 2011) (emphasis added).  This "implied covenant imposes upon each party the obligation to do everything the contract presupposes they will do to accomplish its purpose."  <u>Schoolcraft v. Ross</u>, 81 Cal. App. 3d 75, 80 (Cal. Ct. App. 1978).  "The breach of the implied covenant 'involves something beyond breach of the contractual duty itself ... [it] implies unfair dealing rather than mistaken judgment.'" <u>Bally v. State Farm Life Ins. Co.</u>, 536 F. Supp. 3d 495, 513 (N.D. Cal. 2021) (<u>citing</u> <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1394 (1990)).  However, though this covenant exists in every contract, a tort remedy for breach of the duty of good faith and fair dealing may not exist without a special relationship.  <u>Mitsui Manufacturers Bank v. Superior Court,</u> 212 Cal. App. 3d 726, 260 Cal. Rptr. 793 (Ct. App. 1989) (citing <u>Foley v. Interactive</u>

16

Data Corp., 47 Cal. 3d 654, 692 (1988)).  California courts have not recognized a special relationship in "ordinary commercial contexts."  Id.  In Foley, the California Supreme Court refused to find that a special relationship existed between an employer and employee.  "Foley, impliedly if not expressly, limits the ability to recover tort damages in breach of contract situations to those where the respective positions of the contracting parties have the fiduciary characteristics of that relationship between the insurer and insured."  Mitsui Manufacturers Bank, 212 Cal. App. 3d at 730 (citing Foley, 47 Cal. 3d at 692 (1988)).

This Court will not extend California law to find a special relationship here.  Plaintiff fails to allege that the transaction involved any unequal bargaining power or extended beyond an ordinary commercial relationship.  See Mitsui Manufacturers Bank, 212 Cal. App. 3d at 730.  Instead, Plaintiff simply alleges that "Defendants" breached the duty of good faith and fair dealing relating to the California Project by "fail[ing] to support the California project by failing to pay the initial deposit that was required to commence the California Project and by failing to compensate [Plaintiff] for the millions of dollars of equipment purchased by [Plaintiff.]"  (Dkt. # 24 at 15.)  Plaintiff also alleges that Defendants failed to act with good faith when they "rebuked [Plaintiff]'s attempts to reinitiate the California Project."  (Id.)  Not only are these allegations vague and conclusory, but

they also fail to allege facts beyond mere breach of contract to justify the finding of a special relationship between the parties.

Therefore, this Court finds that Plaintiff has not stated a breach of good faith and fair dealing claim under California law.  The claim is dismissed with prejudice, as it appears that the defect is incurable.

B. Texas Law

Texas law explicitly rejects an implied duty of good faith and fair dealing unless a special relationship existed before the agreement.  In Hux v. S. Methodist Univ., the Fifth Circuit explained that "Texas law does not impose a generalized contractual duty of good faith and fair dealing and rejects it in almost all circumstances."  819 F.3d 776, 781 (5th Cir. 2016) (citing English v. Fischer, 660 S.W.2d 521, 522 (Tex. 1983)).  The "extremely narrow class of cases" in which Texas courts have determined that a special relationship may give rise to a tort duty of good faith and fair dealing are when the parties are in a formal fiduciary relationship (e.g., principal-agent, attorney-client, or trustee-beneficiary) and "when the parties are not formal fiduciaries but are nonetheless in a special or confidential relationship."  Id. (emphasis added).  There is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions.  Id.; Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 52 (Tex. 1998); Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823

S.W.2d 591, 594 (Tex. 1992) ("The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship.").

Accordingly, Defendants argue that Plaintiff's FAC describes arms-length negotiations between sophisticated businesses and fails to allege a preexisting special relationship or injury beyond contractual disagreements. (Dkt. # 31 at 8.)

Plaintiff argues that its allegations are sufficient to support a breach of good faith and fair dealing claim under Texas law. (Dkt. # 27 at 13.) Plaintiff concedes that Texas law requires a special relationship to support such a claim. (Id. at 14.) But Plaintiff maintains that such a relationship existed due to the significant financial commitments and the power imbalance in their dealings. (Id.)

Both Plaintiff and Defendants are sophisticated business entities, and there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions. Formosa Plastics Corp. USA, 960 S.W.2d at 52. While Plaintiff made significant financial commitments through initial installment payments, this is not unusual in large-scale commercial contracts, especially in high-tech and manufacturing sectors.

Because the transactions between Plaintiff and Defendants were arms-length commercial dealings between sophisticated parties, and the financial

commitments involved do not inherently create a special relationship, this Court dismisses Plaintiff's claim for breach of the implied covenant of good faith and fair dealing under Texas law with prejudice.

V.    Quantum Meruit

In Count III, Plaintiff brings a quantum meruit claim in the alternative to breach of contract, alleging that Defendants benefited from valuable services and materials furnished by Plaintiff, which Defendants accepted and used.  (Dkt.  # 27 at 11–13.)  Specifically, Plaintiff alleges that Plaintiff furnished valuable services to Defendants by providing additional labor and materials to support the Texas Project due to "Defendants' failure to provide the parts, data, and information required for adequate testing and instillation of the Systems."  (Id.)

Defendants move to dismiss Plaintiff's quantum meruit claim because the existence of a governing contract precludes recovery under this equitable remedy, and Plaintiff has not demonstrated that the services rendered were beyond the scope of the Texas Agreement.  (Dkt. # 31 at 4.)

The elements of a claim for quantum meruit under Texas law are: "(1) that valuable services were rendered; (2) for the person sought to be charged; (3) which were accepted, used and enjoyed by that person; (4) under circumstances that reasonably notified that person that the provider was expecting to be paid by that person."  El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico,

Inc., 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010).  The motivating principle behind

a quantum meruit claim is unjust enrichment, an implied contract

theory.  Provision Grp., Inc. v. Crown Toxicology, Ltd., No. 5:16-CV-1291-DAE,

2017 WL 11221433, at *4 (W.D. Tex. Oct. 19, 2017).   A quantum meruit claim is

routinely allowed to be plead as an alternative to a breach of contract cause of

action.  D&M Specialties, Inc. v. Apache Creek Properties, L.C., No. SA-12-CA-

588-FB, 2014 WL 12493290, at *5 (W.D. Tex. Aug. 21, 2014) (collecting cases).

      Defendants argue that this Court should dismiss Plaintiff's quantum

meruit claim because Plaintiff fails to allege that Defendants received any valuable

services.  (Dkt. # 31 at 9–10.)  Defendants argue that Plaintiff acknowledges that

the Texas Project is incomplete and that the installed equipment is unusable in its

current state.  (Id.)  Consequently, Defendants argue that the services and materials

were not valuable to them.  (Id.)

      To the extent that Defendants argue the services rendered are not

"valuable" to them, "nothing in the law requires that a plaintiff must establish that

value before filing suit and substantiate that value in a manner acceptable to the

benefitted party or else be estopped from asserting a quantum meruit

claim."  Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc., 346

S.W.3d 172, 188 (Tex. App.—Houston [14th Dist.] 2011).

That said, Plaintiff's allegations are conclusory.  Plaintiff simply states it "furnished valuable services to Defendants by providing additional labor and materials to support the Texas Project that were necessitated by Defendants' failure to provide the parts, data, and information required for adequate testing and installation of the Systems."  (Dkt. # 24 at 13.)  Plaintiff has not specifically alleged "what, when, or how" valuable services were rendered, to which Defendant the services were rendered, and how Defendant accepted and enjoyed the services. See Provision Group, Inc. v. Crown Toxicology, Ltd., No. 5:16-CV-1291-DAE, 2017 WL 11221433 (W.D. Tex. Oct. 19, 2017) (dismissing quantum meruit claim because Plaintiff alleged brief factual allegations couched as legal conclusions). Therefore, the Court dismisses the quantum meruit claim without prejudice. Plaintiff is granted the opportunity to amend its complaint to allege the claims with more specificity.

VI.    Implausible Shotgun Pleading.

Defendants argue that the remaining  claims contained FAC should be dismissed as an implausible shotgun pleading.  (Dkt. #25 at 16.)  Specifically, Defendants ask that the claims based on the California Agreement be dismissed against Simwon NA because Simwon NA is based in Texas and only operates a Texas factory.  (Id. at 18.)  Defendants also ask the Court to dismiss the breach of contract and breach of good faith and fair dealing claims against Simwon NA

because it was not a signatory of the Texas Agreement.  (Id.)  Defendants argue that Plaintiff's FAC fails to distinguish between Defendants adequately.  (Id.)

The FAC involves two separate agreements, the California and Texas Agreements, both signed only by Simwon Tech. The disputes center around the failure to deliver equipment for two plants operated by separate entities in different states.  (Id.)  Therefore, asserting claims against all "Defendants" in such varied contexts is confusing and implausible.  (Id. at 17.)

While courts do not dismiss complaints solely because they contain allegations against a group of defendants, the court must determine whether the circumstances of the case allow for claims against all Defendants.  Valadez v. City of San Antonio, No. SA-21-CV-0002-JKP-RBF, 2022 WL 1608016, at *6 (W.D. Tex. May 20, 2022).  Ultimately, a complaint must provide specific factual allegations to support a plausible claim against each defendant to suffice.  See Hinojosa v. Livingston, 807 F.3d 657, 684 (5th Cir. 2015).  Therefore, while group allegations may be accepted in some contexts, it is inappropriate here, where Simwon NA is neither a party to either the Texas or California Agreement, nor is it plausibly involved in the California Project.  Id.

Overall, the Court dismisses all claims against Texas-based Simwon NA without prejudice, allowing Plaintiff the opportunity to amend its complaint to address these concerns and specifically allege Simwon NA's involvement.

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss shall be

**GRANTED IN PART AND DENIED IN PART.**

All claims against Simwon America are **DISMISSED WITHOUT**

**PREJUDICE** because the Court lacks personal jurisdiction over Simwon

America.  Plaintiff, should it choose to do so, can file a complaint against Simwon

America in the appropriate Federal District Court in California.

Both of Plaintiff's claims of breach of good faith and fair dealing are

**DISMISSED WITH PREJUDICE.**

Plaintiff's quantum meruit claim shall be **DISMISSED WITHOUT**

**PREJUDICE**.  All claims against Texas-based Simwon NA are **DISMISSED**

**WITHOUT PREJUDICE**.  The remaining claims survive.  Plaintiff has until

August 12, 2024 to amend its complaint.

**IT IS SO ORDERED.**

Dated: Austin, Texas, July 10, 2024

_____
David Alan Ezra
Senior United States District Judge

24